Good morning, your honors. May it please the court, Edward Hsu from Best and Flanagan appearing on behalf of the appellants. The issue in this case is the appealability of, excuse me, the arbitrability of counterclaims in an attorney fee contract. The district court erred by determining arbitrability based on labels, based on potential remedies, based on the merits of the counterclaims, and at least in one instance, based on the timing of when the counterclaim allegedly occurred. Now we know from this court's precedent that the Federal Arbitration Act must be construed, tells us to construe contracts liberally with an eye towards arbitration, resolving doubts and ambiguities in favor of arbitration. And regardless of whether a clause is broad or narrow, there has to be positive assurance that the contract does not cover the disputed, the asserted dispute in order to avoid arbitration. Here there's no limiting language, there's no prohibiting language. The clause says, the operative words are, if any disagreement arises about the termination fee, then the parties will arbitrate. Now we absolutely agree this is not one of those broad clauses like we saw just a few months ago in the Palm v. Bluestem case. This isn't your standard any and all disagreements arising out of relating to interpretation, enforcement, or breach of the contract. We're not saying it is. But it's also not so narrow as the firm is arguing now on appeal. Even the district court didn't think it was that narrow, because look at what the district court granted. Of the nine counterclaims, all of them are arbitrable for one purpose or another. Three are arbitrable, all nine can be dismissed according to the district court by the arbitration panel. Counsel, before you get to the counterclaim, I just want to ask you, based on the plain language of the provision, what can and cannot be arbitrated? In other words, break down the plain language of that particular provision in the contract. There has to be a disagreement about the termination fee. So we're not talking if the case went to conclusion. We're not talking about anything after a settlement or a verdict. That's actually addressed in an earlier part of the attorney fee contract. We're only talking about disputes that arise if the lawyer-client relationship ends early. And then everything comes in. So in other words, you could do set-offs for all kinds of different things, as long as there's a disagreement about the fee. Yeah, Your Honor, that's right. That's what the clause allows for. And those words, if any disagreement arises about, those are the words that were chosen. And it makes sense here because every fee dispute, as we know, there's two sides to it. There's the clients arguing malpractice, misconduct, malfeasance, breaches of duties. And that's why they're not paying the fee, among other reasons. Doesn't that read out the first sentence, though? I mean, it talks about the termination fee, but isn't that really a reference back to the previous sentence, which talks about the things that they can fight about in arbitration, which is whether the client has terminated the firm's employment, whether there was good cause or not, and how much the fee is. It seems to me that that second sentence is just a reference back to the first sentence. Why am I wrong about that? Well, if Your Honor reads on the very last sentence, for example, of the whole clause, if the firm terminates the representation, then it shall receive no fee or expenses. There's no, I think even the firm is agreeing that that, too, would be an issue to be arbitrated. Who terminated? Firm or client? Why? I agree. That's all in the first sentence. Right. But we submit that you could almost put these, the four or five sentences here in different orders, and you'd come to the same result as to what's arbitrable or not. It's termination, by whom, and why. And disagreements, if any disagreements arise about the termination fee, that's the operative language about, it's those disagreements that are to be arbitrated. What I don't see in there is if there's any disagreement about the termination fee, then you can litigate whatever you want before the, any, any, any, any disputes of whatever nature between the client and the firm can then go to arbitration. I don't see that in the, in the clause. And I'm not suggesting it's, it's the, it's as broad as, like I said earlier, those mega broad clauses like the Parm v. Bluestem case. We're not saying it is. But when we look at the counterclaims on the, the allegations of them, counts four through 12, which are at issue here, they all relate to the, the fee, a fee dispute. And this started before the firm brought its complaint in state court. And that's borne out in the email traffic. Right when the dispute arose, it arose from the firm saying, I want to make a quick settlement. Is that okay? Client's saying, well, you told me you were going to do all this work and achieve a great victory here. Now you want to quickly settle for a, a premium? Well, you better call me first. Fine if you want to go talk to the other side, but you got to call me first. The firm doesn't do that. They go behind the client's back. One of the worst things they could have done was ruin a potential settlement by throwing out unauthorized numbers and then not even telling the clients. And then later that day saying, by the way, knowing what, what you, I think you would expect, I threw out this number. And then I got a counter number. The client's at this point, or, you know, you have to peel them off the ceiling. They're so upset. And they're saying you've, you've done everything you're not supposed to do. You've, you've done contrary to my wishes. You're done. And we're going to arbitrate under this, your, your fee, which had been talked about anyway as being modified. That's the genesis of this dispute. It's ultimately a very big fee dispute based on malpractice, based on malfeasance, based on deceit. The district court's order here isn't, isn't all wrong. As we say, the district court really grappled with plugging these counterclaims into this clause and saying, yeah, most, frankly, they're all arbitrable for one purpose or another. Count 4, breach of contract, is arbitrable in its entirety, including getting damages against the firm. The other ones . . . Can you move that microphone over a little bit? I apologize, Your Honor. The other counterclaims, all arbitrable. The equitable relief funds, all arbitrable. The negligence and breach of fiduciary duty, arbitrable up to a cap or up to an offsetting amount. Deceit, same allegations as negligence and breach of fiduciary duty, which are arbitrable to some extent. Defamation, the, the underlying allegations are also found in the other allegations that are found arbitrable. But the district court's reasoning was, well, that sort of happened after the termination. And we know from the Morgan v. Smith Barney case and others that the timing of a claim doesn't affect its arbitrability. The deceit, the district court's reasoning was simply, you don't, the parties couldn't have anticipated treble damages here. Arkham case, Torres case, Larry's, Bailey, of course, Benihana as we cite, you never look at remedies prospectively in deciding arbitrability in the first instance. That's for the arbitrators. And Benihana, the reason we really point to that is that's kind of what happened here. We have the district court saying, no, no, no, you guys aren't going to arbitrate that and you can't argue that in arbitration. And it could have been this circuit. It's the fact it's out of circuit doesn't really matter. The second circuit correctly said, that's not what we do at this stage. The remedy, the recourse for a party who thinks the arbitrator has exceeded their authority is afterwards under the FAA in a motion to vacate or correct or modify. It's not interfering with the arbitration at this stage. And you don't jump, look at the merits. You don't look at what parties can and can't argue. That's up to the arbitrators to decide what comes in, what doesn't come in. So, Your Honor, we have a clause that the district court mostly got right in a lot of respects. But by limiting the remedies or relief the panel could award by looking at the merits of what the outcome ought to be or shouldn't be, by looking at the labels, all the cases we've cited from this court, so you don't look at remedies, you don't look at labels, you don't look at what relief might be awarded, and you don't look at the timing. The fact there's a statutory claim, deceit to treble damages, that doesn't factor in to arbitrability in the first instance. So without any limiting language and without when you properly look at how you determine arbitrability, the district court's order has to be reversed as we've outlined here. The counterclaims have to proceed at this stage without interference. One of the biggest things, and the firm has really no means of doing this, that request is outstanding. So how can the counterclaims be arbitrable for dismissal, yet not arbitrable for any other purpose? But the district court did say that it would take those up when the case was done, right? I mean, if you wanted to bring them before the district court. Right. And, well, one of the problems here is the counterclaims, they're not in court. They're never filed in court. They never were. The bifurcation is kind of a, it's a mistake of the procedural history to think there's some bifurcation here. What's the significance of that? Well, Your Honor, the significance is we, there's nothing pending before the court. I understand that, but I mean, why is that significant to the appeal? Is this your jurisdictional argument or? No, Your Honor. I guess I raise that because the district court seemed to think that the counterclaims had actually been filed in court and were pending and are now stayed. They're not pending in court. They're not. I don't know if he said that. He said, well. He said there'll be things for me to decide when you're done. What is left? What will be left for the district court? If we, if the district court's order were affirmed right now and we proceed to arbitration as is, then the arbitration's, the panel's decision, whatever it may be, is presented to the district court to be confirmed, modified, vacated, whatever. What we didn't get to arbitrate under the district court's order, we would have to file those counterclaims in whatever form they're in. They're sort of half in arbitration for some purposes and not others, but they could all be dismissed by the panel and they could be, there's certainly some preclusive effect. We're capped. Why? Why would, if the district court has basically said the arbitrators cannot consider these claims. Except for dismissal. Well, they'd be dismissing them for lack of authority to. Unclear. Adjudicate them, wouldn't they?  All right, well. But they'd be certainly. I don't know if you'd be precluded on, it'd be tough to get you precluded on that ground if the court order has said there's no authority. Yeah, and I appreciate that for rest to really have effect the first court or tribunal must have full jurisdiction over everything. But when we look at the transcript and I think it's undisputed, everyone agrees they're going to be bound by whatever the arbitrators conclude. When you brought up the bifurcation point, I thought you were talking jurisdiction because the briefs have a little back and forth, you know, where the, where the appellees seem to say there's no appellate jurisdiction here. That's kind of a casual statement in the firm's brief without any analysis. I mean, this is appealable. What do you think is the provision that gives jurisdiction? The cases we've cited, Your Honor. Well, I'm looking at the statute. I was thinking you would invoke a two of section 16 in interlocutory order. I believe. Branding an injunction against an arbitration. Is that it or is it some other provision? I believe that's it, Your Honor. 9 U.S.C. 16A is, you know, essentially this is an order enjoining counterclaims and relief. It's an unusual posture because usually the claims are brought in court first, right? It is an unusual posture. So I don't know if there's any authority like this where the district court has reached out to the arbitration in the first instance and. Stopped it. Stopped it, yeah. But you think that would qualify as an order granting an injunction against an arbitration? Yes, Your Honor. And some of the cases that we cited, we couldn't find any from this circuit really directly on point except Connors and Norden. But those cases from other circuits say that any, the general rule is if you're interfering with arbitration, that's appealable. If you're allowing arbitration, that's not appealable. Right. No, I get that. I just was trying to see how it would fit into the text of one of these provisions. But you're right, the cases generally say that's the dichotomy. Would you like to save any time for rebuttal? If I could, Your Honor. Very well. Thank you. You may. Mr. Evans, we'll hear from you. May it please the court, counsel, it's true federal policy favors arbitration, no doubt about it. And the courts have said there's a presumption favoring arbitration. And the doubts or ambiguities favor arbitration. But none of those principles apply here. First and foremost, arbitration is a matter of contract. The guiding principle in reviewing the arbitration agreement, according to both the Supreme Court and this court, is to give effect to the contractual rights and agreements of the party. Intent of the contracting party controls over any federal policy favoring arbitration. The duty of the court is to uphold and enforce the party's intent. As noted by the Supreme Court in the EEOC versus Waffle House case, in the absence of an ambiguity in the agreement, it's the language of the contract that defines the scope of the dispute subject to arbitration. And nothing in the Federal Arbitration Act authorizes a court to compel arbitration of issues that aren't covered by the party's agreement. And I think that case, I think this case is that simple. What do the parties agree to in this case? Parties can limit claims or issues that they want to submit to arbitration. Arbitration clauses, if clear, unambiguous, and narrowly drawn, don't need to apply to all disputes between the parties. It may be more difficult, more messy to have bifurcation, but if that's what the parties want, that's what the courts should order. What's your response to opposing counsel's argument that that second sentence, and I think I know what your answer's going to be, that second sentence basically allows all kinds of claims to come in. Yeah, it doesn't say. They try to rewrite. They try to rewrite Judge Pearsall's opinion, and they also try to rewrite Paragraph 4. The second sentence, if any disagreement arises about the termination fee, and again, Paragraph 4 has to be read all together, like your Honor noted, and interpreted consistently, and can't ignore any portion of that paragraph. It doesn't say any, they want to say any disagreement about the termination fee. They want to change that to say any disagreement or disputes about the representation or among the parties. And literally, I think the language that they'd like, or that they try to analyze to, is anything that, any disagreement about the representation, because that was their dispute, is about certain of the representation. And then they can say all our counterclaims relate in some way to the representation. But it is not that broad. It's simply what is a fair fee, period. It doesn't really say anything. It just says if any disagreement arises about the fee, then the parties choose people. But it doesn't say what they're supposed to do once they're chosen. So you have to write a... It says that the majority decision of the third person, what they decide is a fair fee. They claim that, gee whiz, Judge Pearsall... You mean you think they're limited to whether the fee was fair? That's the only thing the arbitrators can decide? Except the fee, period. What about the other things from the first sentence? For instance, who terminated the firm's employment, and whether there was good cause for the termination? Well, Judge Pearsall did stuck his toe in the water and say that the termination was without... that the clients did terminate the firm. But realize how he came to that. There's no answer then. There's no affirmative defenses. There's no counterclaims. There's a motion to stay to send to arbitration. He says, okay, should this case go to arbitration? If the client terminated the firm's employment, then it goes to arbitration. No, it has to be without good cause. Yeah, if they terminated the firm's employment before the conclusion without good cause, you're right. But I thought the order sent good cause to the arbitrators to decide. Yes, it did. Whether or not there was good cause was sent to the arbitrators. So it's more than just the amount of the fee. It's also whether there was good cause. Yes. You're agreeing with that. Yes, but once you get... Why wouldn't it also include whether the client terminated? Well, as I say... If it includes good cause, it's part of the same first condition for arbitration. I understand. And quite frankly, I think the reason that Judge Pearsall decided that issue was because of the context that it was presented to him in. But we would be the first to say that if that issue, that that issue may be subject to arbitration if this court decides that. But that doesn't mean that all the counterclaims are. It just means that as an initial matter, they decide whether there's termination. Right. But whether that client terminates issue of subject arbitration is one of the issues on appeal. So... I understand. Are you acquiescing in that issue? I'm not acquiescing because I do think that under the Federal Arbitration Act, the Federal District Court can at least, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court doesn't rule on the merits. But nevertheless, according to the FAA itself, the court can engage in a limited inquiry to determine whether a valid agreement to arbitrate exists and whether the specific dispute falls within the scope of arbitration and what's going to be arbitrated. And so Judge Pearsall did make a limited inquiry into whether or not there should be arbitration in this case. I'm just wrestling with why client terminates would be decided by the court and good cause would be decided by the arbitrator. Because it seems like both of those things are conditions. And I'm saying... To trigger the payment of the fee. And I'm not agreeing to that. I'm not agreeing to it, but I understand your position. And I do think that you could... Well, it's not a position. It's a question as to whether we should reverse the client go to the arbitrator or, on the other hand, whether we should say both of those issues are for the court. But why would we split them? Well, because I do think... It's asking for your enlightenment. As an initial matter, if the firm terminates the representation, there's nothing to arbitrate. Arbitration clause doesn't apply. There's nothing to arbitrate. So Judge Pearsall said, I'm sending this to arbitration. And it is subject to paragraph four in arbitration because the firm... You think he had to decide that client terminates issue to decide that there's even any arbitration available? That's the way paragraph four reads. But isn't the design of all this to avoid the court at all costs? I mean, the reason why you do an arbitration provision is to lay everything regarding that particular issue on the arbitrator so you never have to go to court to expedite proceedings. And so shouldn't all the preconditions for arbitration be decided by the arbitrator so that you don't have to go to court? It seems kind of crazy to draw an arbitration provision where you run to court to figure out whether the client or the firm terminates, but then the good cause is sent to the arbitrator. That's a very uncommon arbitration clause. I would agree. It's unique because it was hand-drafted and it obviously isn't a triple A or some other form out of a form book. The lawyer said, listen, you know, Mark Meyer Henry, former Attorney General, said, listen, I think my fees are fair. I think I charge a fair fee. If we have some disagreement about the amount of my fee and whether my services are worth it, you go pick two, I'll pick one, and we'll let them decide what the fair fee is. That's what it was. It was a matter of contract. And I agree with what you're saying, Your Honor, except that everything you say does not take precedence over the intent of the parties. And here the intent of the parties was, if there's a fee dispute, we're going to let a panel, you pick two, I'll just pick one, and we're going to decide the fees. But we aren't going to say, is that you pick two and pick one to have all kinds of collateral tort claims, seeking trouble damages for fraud and deceit and defamation that allegedly occurred even after the representation was terminated? I mean, there's no way you can interpret paragraph four into that. It's a simple on its face and it's unique. I agree. It's unique because it's drafted to fit a situation of if we have a problem with how much uncharging. It's that simple. What about your jurisdictional argument? Pardon? Your jurisdictional argument? All right. Is that what you're planning on addressing that or? Yes, I can address that right now. Something you've abandoned. Section 16 of the Federal Arbitration Act governs appellate review. Interlocutory appeal that orders arbitration and staying in action is not appealable. Orders arbitration and stays in action. This court held that in equity sales versus pals, quoting Greentree, United States Supreme Court, need a final decision. Final decision ends litigation on the merits. And the court noted in Greentree that if the district court entered a stay of dismissal, that the order would not be appealable. But this case is different in one, I think, important way, which is that the, as opposing counsel says, and I think the record reflects this, the counterclaims were not actually filed before the district court. The district court reaches out and says, you know, if you want to file those counterclaims later, bring them to me, I'll decide them. But they were  And the district court comes in and says, no, you can't. I mean, you've challenged it. District court says, no, you can't do those claims before the arbitrator. They're things for the court to decide, not part of this arbitration clause. So doesn't that have the, and the court, the cases use this practical effect of staying portions of the arbitration. So therefore it would be immediately appealable under 16A2? Well, two things. Number one, I'm not sure that I'm not filing the answer. I mean, I'm not sure how that helps them. If anything, it means that the answer in those portions of the counterclaim haven't been asserted in court. And the court certainly had jurisdiction to decide whether they should be submitted by arbitration to decide the scope of it. And I'm not sure what gamesmanship's being played by not filing it and saying, here's where we're coming from. When the original motion to stay was before the district court, the district court inquired about counterclaims and, and seeking damages. And they said, you can't, you can't inquire about that. Well, it's not gamesmanship. Pure speculation. They, their sincere position, I would assume, is that this should go to the arbitrator. They don't believe that this should ever go to court. And so they filed it in the arbitration. Now they may be wrong about that, but that's a little different than, than the cases you're citing us. Well, but if, if we look at the orders themselves, we have two orders from Judge Pearsall, May 1st, 2017, motion to stay and compel arbitration as granted. Okay. We have that. Then we have the later one when they were taking the position that the arbitrator got to decide if the counterclaims were subject to arbitration. And we said, no. And they said, you're, you're, you're, you're agreeing because you're arguing to the arbitrators that they shouldn't be decided by arbitration. You're agreeing to let the arbitrators decide this decision. So we said, no, look at first options and the United States Supreme Court. And to avoid an estoppel argument, we went back to court and said, judge, can you clarify your ruling? And they raised before Judge Pearsall an estoppel argument claiming we waived it. So we were glad that we went back. So what did Judge Pearsall's subsequent order say? He didn't deny. All he did is define the scope of arbitration, which is what his role is. The weakness of that though, is under the Federal Arbitration Act, a district court doesn't have some general supervisory authority like appellate courts have over lower courts. They can't just jump in. They have limited powers and they can either enjoin the proceedings or they can't. General supervisory authority. So to, I guess we got to place the action that the district court took into one of these categories. And it seems like the stay is as good as any. Well, yes. Or the injunction. He stayed. Or the injunction. Well, he never issued an injunction. I mean, there's no injunction. There's no mandatory language of any kind. So he didn't do that. He did stay and submit it to arbitration. And what did he submit to arbitration? I've decided the scope of arbitration, which, which was what he needed to do. I've decided the scope of arbitration and here it is. And an appeal should wait until all of this is sorted out. In conclusion, I will simply say the agreement to arbitrate in this case is narrow. It's specific. It's unambiguous. It doesn't accompany, it doesn't include the client's affirmative tort claims and other collateral claims seeking consequential damages. The parties agreed to resolve disputes over a fair fee. No more. And they say, well, what about the negligence and this type of thing? Well, claims of malpractice affecting the quality of services. And Judge Pearsall allowed that to go. If it's a claim affecting the quality of services, that necessarily is going to affect the reasonableness of the fee. So those types of things can go in, in consideration of what's a fair fee. But affirmative collateral claims for consequential damages incurred as a consequence of the services rendered during the course of the employment as an attorney are separate and apart. They aren't related to the fee. And those claims are not within the scope of the party's agreement. This is unique. It was bifurcated. They should have waited and let Judge Pearsall sort it out after the arbitration and then brought an appeal to the court if need be, or we would have. But right now, all there is from Judge Pearsall is there's a motion to stay that was granted, an order for arbitration that was granted, and an order deciding the scope of arbitration. Thank you. Very well. Thank you for your argument. Mr. Hsu, you have a brief amount of time remaining. Thank you, Your Honor. Thank you, Your Honor. Very briefly, the firm is the one trying to rewrite the clause here by saying it's limited to the amount of the fair fee. It doesn't say that. The firm could have used the model rules for arbitration the ABA has given us, which delineate precisely the arguments they tried to make below, distinguishing affirmative relief versus equitable relief. They had a way to write this the way they now wish it said, but they didn't. Who terminated is absolutely part of the underlying arbitration. Just look at the three equitable relief claims the district court did allow us, declaratory judgment, fee forfeiture, and estoppel. Those say that they terminated. They quit. So the district court and the firm didn't appeal that issue. Who quit is absolutely already arbitrable. Proceed. All right. Very well. Thank you for your argument. The case is submitted and the court will file an opinion in due course.